**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**UNITED STATES OF AMERICA,**
        **Plaintiff,**

    v.                                                                               Case No. 03-CR-46

**ELI SAMARAS,**
        **Defendant.**

---

## SENTENCING MEMORANDUM

### I. BACKGROUND

Defendant Eli Samaras allowed the participants in a large-scale coupon fraud scheme to use his Yonkers, N.Y. check cashing business to negotiate checks received from the victims of the offense.[1] Before authorities discovered the scheme, the participants had run more than $1.6 million in checks through defendant's business. The government indicted defendant, and he pleaded guilty to a violation of 18 U.S.C. § 1349, conspiracy to obtain money by means of mail and wire fraud.[2] The probation office prepared a pre-sentence report ("PSR"), which calculated defendant's offense level as 23 (base level 6, U.S.S.G. §

---

[1] A man named Abdel Jebara devised the scheme, recruiting others to collect and cut thousands of coupons from newspaper inserts. Jebara and other co-conspirators then recruited more than 300 "stores" in New York, Wisconsin, Florida and elsewhere (some of which were not actual retail stores) to fraudulently redeem the coupons. United States v. Jebara, 313 F. Supp. 2d 912, 913 n.2 (E.D. Wis. 2004). Jebara's scheme netted more than $5 million.

[2] The government also charged defendant with money laundering but dismissed the charge pursuant to a plea agreement.

2B1.1(a) (2002),[3] plus 16 based on loss amount, § 2B1.1(b)(1)(I), plus 2 for number of victims, § 2B1.1(b)(2)(A), plus 2 for role in the offense, § 3B1.1(c), minus 3 for acceptance of responsibility, § 3E1.1), and his criminal history category as I, producing an imprisonment range of 46-57 months.

Neither party objected to the PSR's guideline calculations, but the government moved for a downward departure under U.S.S.G. § 5K1.1 based on defendant's substantial assistance, and defendant requested a non-guideline sentence based on the factors set forth in 18 U.S.C. § 3553(a). In this memorandum, I address the parties' contentions and provide reasons for the sentence imposed.

## II.  DISCUSSION

**A.     Sentencing Procedure**

After United States v. Booker, 125 S. Ct. 738 (2005), I follow a three-step sentencing procedure. First, I determine the applicable advisory guideline range, resolving any factual disputes necessary to that determination. Second, I determine whether, pursuant to the Sentencing Commission's policy statements, any departures from the advisory guideline range clearly apply. Finally, I determine the appropriate sentence in light of the factors set forth in 18 U.S.C. § 3553(a). See, e.g., United States v. Pallowick, 364 F. Supp. 2d 923, 925-26 (E.D. Wis. 2005).

---

[3]The PSR used the 2002 version of the guidelines to avoid ex post facto concerns. See U.S.S.G. § 1B1.11(b)(1).

In the present case, the parties agreed with the PSR's advisory guideline calculations, thus, I proceeded to the second step.[4]

**B.    Substantial Assistance Motion**

Pursuant to § 5K1.1, the government moved for a 2-level reduction based on defendant's substantial assistance in the prosecution of others. In evaluating such a motion, I consider:

(1) the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3) the nature and extent of the defendant's assistance;

(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance; and

(5) the timeliness of the defendant's assistance.

U.S.S.G. § 5K1.1(a).

I give substantial weight to the government's evaluation of the extent of the defendant's assistance, U.S.S.G. § 5K1.1 cmt. n. 3; see also United States v. Winters, 117 F.3d 346, 349 (7th Cir. 1997), but the extent of the departure is within my discretion, see United States v. Newman, 148 F.3d 871, 875 n.2 (7th Cir. 1998). In considering a § 5K1.1(a) motion, I typically employ the method suggested in United States v. Thomas, 930 F.2d 526, 531 (7th Cir. 1991), overruled on other grounds by United States v. Canoy, 38

---

[4]Defendant argued that the PSR should not have characterized a New York harassment violation as a criminal conviction. I agreed that the offense in question was non-criminal. However, defendant did not dispute that the offense scored 1 criminal history point, and in any event defendant fell into criminal history category I with or without this offense.

3

F.3d 893 (7th Cir. 1994), and award a 2-level adjustment for each § 5K1.1 factor found to be fully present, see, e.g., United States v. Washington, 293 F. Supp. 2d 930, 934 (E.D. Wis. 2003).

In the present case, defendant provided information to authorities concerning both the instant offense and other criminal activity in his neighborhood, including possible firearms violations, possession of counterfeit currency, and a business suspected of wrongdoing. He debriefed and, working in an undercover capacity, continued to cash checks for scheme members, allowed his store to be rigged with sound and video equipment, and wore a wire while engaging in a conversation with a suspect in other criminal activity.

The government considered defendant's information significant in securing guilty pleas in the present case but stated that his cooperation regarding other crimes had not yet born fruit. The government also had a great deal of evidence against the participants in the coupon scheme from sources other than defendant, including hours of recorded phone calls. Thus, I concluded that defendant should receive a 1-level reduction under the first § 5K1.1 factor.

Under the second factor, the government indicated that defendant provided truthful information but could not attest to its reliability or completeness. Therefore, I awarded a 1-level reduction for this factor.

With respect to the third factor, defendant did more than provide information; he also worked in an undercover capacity, wore a wire and allowed his store to be used for surveillance. This active level of cooperation warranted a full 2-level reduction.

4

Finally, I concluded that defendant's cooperation did not involve particular danger or risk and was not particularly timely, thus, I did not grant reductions for the fourth and fifth factors. In total, I reduced defendant's offense level by 4, making the imprisonment range 30-37 months.

**C.    Section 3553(a)**

In imposing sentence, I consider the factors set forth in § 3553(a), which include:

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)    the kinds of sentences available;

(4)    the advisory guideline range;

(5)    any pertinent policy statements issued by the Sentencing Commission;

(6)    the need to avoid unwarranted sentence disparities; and

(7)    the need to provide restitution to any victims of the offense.

I consider the statutory factors sequentially. First, I assess the specifics of the case, i.e. the nature and circumstances of the offense and the history and characteristics of the defendant. Second, I evaluate the facts of the case in light of the purposes of sentencing and the needs of the public and any victims. Finally, I translate my findings and impressions

into a numerical sentence. In doing so, I take into account the kinds of sentences available, the sentencing range established by the Sentencing Commission, any pertinent policy statements issued by the Commission, and any restitution due the victims of the offense. I also seek to avoid unwarranted sentence disparities. United States v. Leroy, 373 F. Supp. 2d 887, 894-95 (E.D. Wis. 2005); see also United States v. Ranum, 353 F. Supp. 2d 984, 989 (E.D. Wis. 2005). After considering all of the above circumstances, I ultimately attempt to impose a sentence sufficient but not greater than necessary to satisfy the purposes of sentencing set forth in § 3553(a)(2). United States v. Galvez-Barrios, 355 F. Supp. 2d 958, 960 (E.D. Wis. 2005).

### 1. Specifics of Case

As noted, defendant allowed the participants in the fraud scheme concocted by Jebara to use his check cashing business to negotiate checks generated by the scheme. Almost $1.6 million passed through his business, an amount large enough to constitute an aggravating factor. On the mitigating side, there was no indication that defendant participated in devising the scheme, and his only profit from it was the 1.1% of the face value of the checks allowed by New York law. In other words, he profited no more than he otherwise did when cashing legitimate checks. Finally, he did not recruit anyone else to participate in the scheme. He did involve an employee of his in negotiating the checks, which resulted in a 2-level enhancement under § 3B1.1(c), but she already worked for the business and was only doing her job.

Aside from the present offense, defendant had behaved positively. He immigrated to the United States from Lebanon when he was ten, became a citizen, graduated from high school and college, and for ten years worked in his family's check cashing business. In

6

2003, after the scheme came to light, he obtained a job as a fair housing investigator for the City of Yonkers, a position he would likely lose upon being sentenced. Defendant lived in the lower level of a home owned by his family and had no children. He had no substance abuse or other treatment needs and no criminal record.

### 2. Purposes of Sentencing

I found no evidence that defendant presented a danger to the public and believed it unlikely that he would re-offend. However, because of the seriousness of the offense and in order to promote respect for the law, provide just punishment, and afford adequate deterrence to criminal conduct, I concluded that I should impose a period of confinement.

### 3. Imposition of Sentence

The guideline range after departure was 30-37 months, but I found this greater than necessary to satisfy the purposes of sentencing. First, since coming to the United States defendant had conducted himself positively, he had strong family support, and he had a solid educational background and vocational history. The guidelines failed to account for these positive attributes. See, e.g., United States v. Page, No. 04-CR-106, 2005 U.S. Dist. LEXIS 19152, at *12 (E.D. Wis. Aug. 25, 2005); Ranum, 353 F. Supp. 2d at 990-91. Further, as a consequence of his conviction and sentence, defendant lost a good public sector job, another factor not considered by the guidelines. Cf. United States v. Redemann, 295 F. Supp. 2d 887, 894-97 (E.D. Wis. 2003) (departing downward where defendant suffered serious collateral consequences from conviction).

Second, defendant's guideline range was driven by the high loss amount, yet he played no role in setting that amount and he profited no more than in his legitimate business

7

dealings. I may appropriately consider these factors in deciding whether to impose a sentence outside the guidelines. See, e.g., Ranum, 353 F. Supp. 2d at 990 (imposing non-guideline sentence where loss amount produced unnecessarily high range and defendant did not profit from offense); see also United States v. Forchette, 220 F. Supp. 2d 914, 925-27 (E.D. Wis. 2002) (departing downward where defendant did not devise the scheme and profited minimally).

Finally, although defendant did not object to the PSR's imposition of a manager/ supervisor enhancement under § 3B1.1(c), I questioned whether in the present case imposition of the enhancement served the purposes of § 3B1.1 – to more severely punish defendants who tend to profit more and present a greater danger or likelihood of recidivism. U.S.S.G. § 3B1.1 cmt. background. The person defendant directed was an employee of his lawful business; she was not recruited to commit a crime, cf. Forchette, 220 F. Supp. 2d at 919 (citing United States v. Schuh, 289 F.3d 968, 972 (7th Cir. 2002); United States v. Fones, 51 F.3d 663, 670 (7th Cir. 1995)); defendant did not profit more than he otherwise did when legitimate checks were cashed; and, as discussed, he posed no threat to the public.

Therefore, I imposed a sentence below the range. In light of all of the § 3553(a) factors, I found that a sentence of eighteen months was sufficient, but not greater than necessary. This sentence afforded an appropriate discount for defendant's positive character and background, the overstatement produced by the loss amount, and the inclusion of the § 3B1.1 enhancement. Finally, the sentence did not create unwarranted disparity because it was supported by the particular facts of the case, as set forth above.

8

## III. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for a period of eighteen months. I also imposed a fine of $10,000, the low end of the applicable guideline range, an amount consistent with defendant's ability to pay over a period of time. Upon release from prison, I further ordered defendant to serve a supervised release term of three years, the conditions of which appear in the judgment.

Dated at Milwaukee, Wisconsin, this 3rd day of October, 2005.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge